# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Case No. 17-20765

v.        Judge Corbett O'Meara

D-1 HUAXIANG ZHU,        Magistrate Judge David R. Grand

        Defendant.

_____/

# BRIEF IN SUPPORT OF
# EMERGENCY MOTION FOR MAGISTRATE HEARING AND
# RELEASE ON BAIL

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................2

QUESTIONS PRESENTED ..........................................................................................3

    I.     SHOULD THE DEFENDANT BE ADMITTED TO BAIL WHERE HE HAS NO PRIOR CRIMINAL RECORD, COMMITTED THE DOCUMENT FRAUD TO BOARD AN AIRPLANE, AND THERE IS NO INDICATION THAT THE FAKE PASSPORT WAS USED FOR ANY PURPOSE OTHER THAN A TRIP FROM CONNECTICUT TO ANN ARBOR TO SEE THE DEFENDANT'S GIRL FRIEND?

MAJOR CASES RELIED ON .......................................................................................4

TABLE OF AUTHORITIES.................................................................................... 5-6

INTRODUCTION ..........................................................................................................7

DISCUSSIONS .............................................................................................................10

    I.     DEFENDANT SHOULD BE ADMITTED TO BAIL IN THIS MATTER WHERE THE DEFENDANT HAS NO PRIOR CRIMINAL RECORD, COMMITTED THE DOCUMENT FRAUD TO BOARD AN AIRPLANE, AND THERE IS NO INDICATION THAT THE FAKE PASSPORT WAS USED FOR ANY PURPOSE OTHER THAN A TRIP FROM CONNECTICUT TO ANN ARBOR TO SEE THE DEFENDANT'S GIRL FRIEND.

CERTIFICATE OF SERVICE ....................................................................................20

# **QUESTIONS PRESENTED**

I. **SHOULD THE DEFENDANT BE ADMITTED TO BAIL WHERE HE HAS NO PRIOR CRIMINAL RECORD, COMMITTED THE DOCUMENT FRAUD TO BOARD AN AIRPLANE, AND THERE IS NO INDICATION THAT THE FAKE PASSPORT WAS USED FOR ANY PURPOSE OTHER THAN A TRIP FROM CONNECTICUT TO ANN ARBOR TO SEE THE DEFENDANT'S GIRL FRIEND?**

## **MAJOR CASES RELIED ON**

*United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).

*United States v. Tapia*, 924 F. Supp. 2d 1093 (D.S.D. 2013)

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*United States v. Adomako*,
   150 F. Supp. 2d 1302 (M.D. Fla. 2001)..................................................................17

*United States v. Adomako*,
   150 F. Supp. 2d 1302 (M.D. Fla. 2001)..................................................................17

*United States v. Ailon-Ailon*,
   875 F.3d 1334 (10th Cir. 2017) ..............................................................................18

*United States v. Barrera-Omana*,
   638 F. Supp. 2d 1108 (D. Minn. 2009) ............................................................16, 17

*United States v. Campos*,
   No. CR. 2:10-MJ-6-SRW, 2010 WL 454903 (M.D. Ala. Feb. 10,
   2010) ......................................................................................................................16

*United States v. Chavez-Rivas*,
   536 F. Supp. 2d 962 (E.D. Wis. 2008) .............................................................11, 14

*United States v. Chen*,
   820 F. Supp. 1205 (N.D. Cal. 1992).......................................................................14

*United States v. Cisneros*,
   328 F.3d 610 (10th Cir. 2003)................................................................................13

*United States v. Eccleston*,
   140 F. Supp. 3d 102 (D.D.C. 2015)........................................................................13

*United States v. Friedman*,
   837 F.2d 48 (2d Cir. 1988) .....................................................................................15

*United States v. John Dennis Tan Ong*,
   762 F. Supp. 2d 1353 (N.D. Ga. 2010) (finding the reasoning
   from *Lozano-Miranda*, 2009 WL 113407, at *3, more persuasive
   than cases disregarding ICE detainers, but also holding that
   detention would be warranted even if ICE detainer did not
   exist) ......................................................................................................................16

*United States v. LaLonde*,
   246 F. Supp. 2d 873 (S.D. Ohio 2003)...................................................................14

*United States v. Lozano-Miranda*,
   No. 09-CR-20005-KHV, 2009 WL 113407 (D. Kan. Jan. 15, 2009) .......................16

*United States v. Mehmood*,
   358 F. App'x 767 (8th Cir. 2010) ...............................................................................15

*United States v. Montoya-Vasquez*,
   No. 4:08CR3174, 2009 WL 103596 (D. Neb. Jan. 13, 2009) ..................................16

*United States v. Salerno*,
   481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).......................................4, 11

*United States v. Sanchez-Martinez*,
   No. 13-CR-00236-JLK, 2013 WL 3662871 (D. Colo. July 12, 2013) ................17, 18

*United States v. Tapia*,
   924 F. Supp. 2d 1093 (D.S.D. 2013)......................................................4,11, 12, 15, 17

*United States v. Villanueva-Martinez*,
   707 F. Supp. 2d 855 (N.D. Iowa 2010)..............................................................11, 16

**Statutes**

18 U.S.C.A. § 3142 ................................................................................................14

18 U.S.C.A. § 3142(c)(1)(B) ..................................................................................12

18 U.S.C.A. § 3142(d) ............................................................................................16

18 U.S.C.A. § 3142(e)(1) ........................................................................................12

18 U.S.C.A. § 3142(f) .............................................................................................13

18 U.S.C.A. § 3142(f)(2)(A) ...................................................................................18

18 U.S.C.A. § 3142(g) ............................................................................................13

Bail Reform Act ..........................................................................................11, 16, 17

## Introduction

Mr. Huaxiang Zhu is a youthful Defendant. He turned twenty-one years old only days before his arrested in the matter. Mr. Zhu was born in Anhui Province of China. His father is a hardworking and honest business man in the electrical works field. His mom is a housewife.[1]

He received pre-college education in China. After primary school, he went to No. 48 junior high school, then attended high school education at NO.8 high school in Hefei. He had a good behavioral record in school, and no criminal history. He is involved in his community and is extremely charitable – he and his parents founded a charity organization to help the poor when he was in high school. Mr. Zhu is a well-behaved and law-abiding man other than the incident occurred on Nov 1, 2017.

In high school, he took TOEFL and SAT exams, and the grades were good enough to get him enrolled in the Unniversity of Connecticut. The fast pace of college study was difficult for him, and he tried very hard to complete his college education. His father, wanted his son to graduate from college in the United States.

---

[1] Defendant's background is based on counsel's discusions with their family attorney in Los Angeles California.

Unfortunately, Mr. Zhu failed to re-enroll himself as a student in September, 2016.

When Mr. Zhu lost his student status in Sep 2016, he could not get his passport renewed because he was out of status. He has been dating his girlfriend Grace for more than one year. Grace is attending the University of Michigan in Ann Arbor. Grace wanted to celebrate her 21st birthday together, and was too busy to fly to Connecticut. Mr. Zhu missed her so much that he took a risk of using a forged passport to fly to Detroit and visit her. There he was arrested for use of fraudulent passport.

Counsel has reviewed the discovery and notes several key facts. First, the passport shows the Defendant's legitimate biographical information. His name and age are accurate. Second, the fraudulent passport does not contain any fake U.S. visas or entry information. Third, according to the police report the document was not overly sophisticated and would not have worked in international travel. The forgery did not attempt to duplicate the security features needed to pass a black light examination, and the Malaysian visas contained

8

on the passport were printed on an inkjet printer, and were one time entry.

Once arrested, after a brief denial, the Defendant admitted his knowledge that the document was fake, and stated that he only purchased the document so that he could see his girlfriend. There is nothing in Defense Counsel's review of the documents that undercuts this story. The Defendant (who turned 21 on this trip) made a stupid decision because he could have applied for a passport from the Chinese Embassy or Consulate and accomplished exactly the same thing. It was the stupid and irresponsible act of a very young (and obviously immature) individual.

The Defendant's luggage and carry-on were impounded and searched by the TSA (with some potential assistance from U.S. C.B.P.), and there was no evidence that the passport was being used in conjunction with any other criminal activity. Again, the identity documents were in his own name, and did not even purport to give the Defendant U.S. status.

Assuming the Defendant is also released on immigration bail, the Defendant's family will rent a furnished apartment for him in the

Metro Detroit area, and provide for his needs. The Defendant is willing to waive his extradition rights from China in open court, and the Defendant is willing to submit to electronic monitoring.

As the argument section of this Brief demonstrates, *infra*, the Defendant should be released on bail in this matter.

## Discussion

I. **DEFENDANT SHOULD BE ADMITTED TO BAIL IN THIS MATTER WHERE THE DEFENDANT HAS NO PRIOR CRIMINAL RECORD, COMMITTED THE DOCUMENT FRAUD TO BOARD AN AIRPLANE, AND THERE IS NO INDICATION THAT THE FAKE PASSPORT WAS USED FOR ANY PURPOSE OTHER THAN A TRIP FROM CONNECTICUT TO ANN ARBOR TO SEE THE DEFENDANT'S GIRL FRIEND.**

In the United States, an accused has a constitutional right to a reasonable bail, and it is the Government's burden to prove that such bail is not likely to establish its twin purposes of protecting society and insuring the appearance of the accused. As the United States

Supreme Court has made clear: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."[2]

The Bail Reform Act makes it clear that in the federal court system criminal defendants will be admitted to bail unless the court finds by clear and convincing evidence (or in some cases preponderance of the evidence) that there is not any condition or combination of conditions which will reasonably assure the appearance of the defendant and the safety of the community. The Bail Reform Act favors the pretrial release of defendants.[3]

Release pending trial is governed by the Bail Reform Act where release is mandated to be under the least restrictive condition or

---

[2] *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).

[3] *United States v. Villanueva-Martinez*, 707 F. Supp. 2d 855, 856 (N.D. Iowa 2010); *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 965 (E.D. Wis. 2008) ("The court may deny release only if no conditions will reasonably assure (1) the defendant's appearance and (2) the safety of the community ... and should resolve doubts ... in the defendant's favor."); *United States v. Tapia*, 924 F. Supp. 2d 1093, 1096 (D.S.D. 2013).

conditions reasonably necessary to assure the defendant's appearance in court.[4]

The charge in the Present Case does not trigger any presumption in favor of detention.[5] Because of this, pretrial detention is acceptable only when the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C.A. § 3142(e)(1) (West). It further directs the Court to consider four factors in determining whether a defendant poses a risk of flight or danger to the public:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence ...;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including–
>
> (A) the person's character, physical and mental condition, family ties, employment,

---

[4] 18 U.S.C.A. § 3142(c)(1)(B).

[5] *Tapia*, 924 F. Supp. 2d at 1096 (another passport fraud case charged under the same statute)

12

>financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and. . . .
>
>(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C.A. § 3142(g). The Government must prove dangerousness by clear and convincing evidence, and flight risk by preponderance of the evidence.[6]

The circumstances under which a detention hearing is held are outlined in 18 U.S.C.A. § 3142(f). A hearing is held in cases where the crime is violent in nature, the offense carries a ten-year felony, the maximum sentence is life imprisonment or death, if the individual is either a serious risk of flight or a risk of obstructing justice, or threatening, injuring or intimidating a prospective witness or juror. If the Magistrate does not find any of the conditions identified in 18 U.S.C.A. § 3142(f) to have been met, then the inquiry into detention

---

[6] *United States v. Eccleston*, 140 F. Supp. 3d 102, 105 (D.D.C. 2015); *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

13

into detention stops.[7]  Moreover, even when a statutory presumption has been triggered, the inquiry does not stop there. 18 U.S.C.A. § 3142 "does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight."[8]

While the Defendant would prefer to return to Connecticut where he has community connections, his family is willing to rent him an apartment in the District.  He is further willing to accept electronic monitoring and a curfew or even house arrest.  "Courts have recognized that electronic monitoring is an effective means of deterring flight."[9] GPS monitoring will still be in place when Mr. Zhu is on curfew.  The Defendant will also be checking in with pretrial services.

The Defendant has no reason to flee.  The Government has stated in other cases that the length of sentence that the Defendant

---

[7] *United States v. LaLonde*, 246 F. Supp. 2d 873 (S.D. Ohio 2003).

[8] *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (*citing United States v. Portes*, 786 F.2d 758, 764 n. 7 (7th Cir. 1985).

[9] *Chavez-Rivas*, 536 F. Supp. 2d at 969, citing *United States v. O'Brien*, 895 F.2d 810, 815–16 (1st Cir. 1990).

faces is likely to make him/her a flight risk.[10] Here, that reasoning favors this Defendant. Mr. Zhu is likely to have already served as long a jail sentence as is going to be required.

While a fake document was used, it contained the Defendant's real name. There is no evidence of a web of fraud, use of multiple identity documents, or criminal sophistication.[11]

Fleeing to China (as the Government might claim) means the Defendant will have given up his career in international business. Given the potential sanction he is facing, that is a fool's errand. As the discussion earlier in this Brief, *infra*, also makes clear, while a fake passport case naturally makes someone think that a person has the means to flee the jurisdiction, the passport in this case is not likely to fool a border control officer and the Defendant is acutely aware of

---

[10] *Cf. United States v. Friedman*, 837 F.2d 48, 49–50 (2d Cir. 1988) (rejecting government's contention that strength of its case and the length of the potential sentence supported a finding of risk of flight from the jurisdiction).

[11] *Cf United States v. Mehmood*, 358 F. App'x 767 (8th Cir. 2010) (relying on these factors to order detention) with *Tapia*, 924 F. Supp. 2d at 1097 (granting release on bail on a passport fraud case where there was no evidence of criminal sophistication).

this from the discussions he has had with the officers and the ease at which it was detected by the TSA.

Lastly, the Defendant's status as a probably removable alien does not warrant preventive detention.[12] As one court eloquently

---

[12] S*ee e.g., United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1112 (D. Minn. 2009) ("While the defendant's illegal status must be considered, the mere presence of an ICE detainer is not a determining detention factor."). Many courts refuse to consider, or give little weight to, evidence of an ICE detainer under the risk-of-flight and nonappearance analysis because the ICE removal process based on a detainer can be unpredictable. *United States v. Montoya-Vasquez*, No. 4:08CR3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009) ("I conclude that the risk of removal by ICE, if cognizable at all under the Act, cannot be determinative of the question of a defendant's eligibility for release."); *Villanueva-Martinez*, 707 F. Supp. 2d at 858 ("The court will not speculate on the possible results of pending immigration proceedings involving the defendant. Accordingly, based on the factors enumerated in the Bail Reform Act, the court finds the Government has failed to prove by a preponderance of the evidence that there are no conditions of release that will reasonably assure the defendant's appearance as required."); *United States v. Campos*, No. CR. 2:10-MJ-6-SRW, 2010 WL 454903, at *4–5 (M.D. Ala. Feb. 10, 2010) (noting that the prospect of removal is not irrelevant and detaining defendant to prevent his certain removal, but stating "courts have correctly declined to order detention where the outcome of immigration proceedings was peculative"); *cf. United States v. Lozano-Miranda*, No. 09-CR-20005-KHV, 2009 WL 113407, at *3 (D. Kan. Jan. 15, 2009) (noting that the "defendant's status as a deportable alien alone does not mandate detention, it is a factor which weighs heavily in the risk of flight analysis," but concluding that defendant was subject to pretrial release); *United States v. John Dennis Tan Ong*, 762 F. Supp. 2d 1353, 1363 (N.D. Ga. 2010) (finding the reasoning from *Lozano-Miranda*, 2009 WL 113407, at *3, more persuasive than cases disregarding ICE detainers, but also holding that detention would be warranted even if ICE detainer did not exist). Congress contemplated that undocumented or illegal aliens would be given detention hearings under the Bail Reform Act. *See* 18 U.S.C.A. § 3142(d) (outlining procedures for temporary detention of an illegal alien and directing court to notify immigration authorities).

Congress has not instructed courts to detain individuals based on the existence of an ICE detainer. *Barrera-Omana*, 638 F. Supp. 2d at 1110 (holding that pretrial

stated this is a situation where one arm of the Executive, wishing to prosecute this defendant criminally, is arguing that he is likely to flee based on the possible actions of a different arm of the same Executive:[13]

> The problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him. It is not appropriate for an Article III judge to resolve Executive Branch turf battles. The Constitution empowers this Court to apply the will of Congress upon a criminal defendant on a personal and individualized basis. This Court ought not run interference for the prosecuting arm of the government.

As the Tenth Circuit recognized last month, a fear of flight for purposes of detention We agree with the latter set of courts that a risk

---

detention based on ICE detainer alone undermines "Congress's carefully crafted detention plan" outlined in the Bail Reform Act and raises Constitutional concerns); *United States v. Adomako*, 150 F. Supp. 2d 1302, 1304 (M.D. Fla. 2001) ("Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings.") ; *United States v. Sanchez-Martinez*, No. 13-CR-00236-JLK, 2013 WL 3662871, at *2 (D. Colo. July 12, 2013) (…"the Defendant's immigration status and the pending ICE detainer are not adequate grounds, standing alone, to justify pretrial detention.").

[13] *Barrera-Omana*, 638 F. Supp. 2d at 1111–12.  *Accord Tapia*, 924 F. Supp. 2d at 1097–98

17

of involuntary removal does not establish a "serious risk that [the defendant] will flee" upon which pre-trial detention may be based. 18 U.S.C.A. § 3142(f)(2)(A).[14]  Flight for purposes of the bail reform act requires volitional conduct on this Defendant's part.[15]

As a Colorado federal court correctly recognized, both US Customs and Border Protection and the Immigration and Customs Enforcement agencies are required by both statute and regulation to not allow an alien to leave the United States where they know that the departure of that alien would be contrary to the interest of the United States.[16]  Any argument to the contrary would ignore this statutory/regulatory mandate.

For the foregoing reasons, the Defendant requests that this Honorable Court grant a change in bond status and allow him to be detained by immigration authorities if possible with any special conditions such as Pretrial Services believes to be necessary to

---

[14] *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017)

[15] *Ailon-Ailon*, 875 F.3d at 1339 (Flight under the BRA is based on concern "that he would fail to appear by virtue of his own volition, actions and will.")

[16] *Sanchez-Martinez*, 2013 WL 3662871, at *3 (collecting sources).

18

reasonably assure his appearance in court and the safety of the community.

WHEREFORE, Defendant respectfully requests that this Court review the order of pretrial detention *de novo* and GRANT the motion for a change in detention conditions.

                              Respectfully submitted,

                              /s/ *Mark A. Satawa*
                              _____
                              MARK A. SATAWA P47021
                              Attorney for Defendant
                              26777 Central Park Blvd,
                              Suite 300
                              (248) 356-8320

Dated: December 14, 2017

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Case No. 17-20765

v.        Magistrate Judge David R. Grand

HUAXIANG ZHU,

        Defendant.

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system that will send notification of such filing to all parties of record, including AUSA Michael C. Martin.

        /s/ *Mark A. Satawa*
        _____
        MARK A. SATAWA

DATED: December 14, 2017